IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **REMO SARACENI** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 21-4947** |
| | : | |
| **MERCHSOURCE, LLC,** *et al.* | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                              **January 31, 2022**

A Delaware company with California offices challenges our exercise of personal jurisdiction over Lanham Act and state claims brought by the Pennsylvania creator of the "Big Piano" featured in the film "Big" from the FAO Schwarz toy store in New York City. The Pennsylvania creator declined our invitation to pursue personal jurisdiction discovery believing he could rely entirely upon his allegations, an ambiguous affidavit from the Delaware company's officer, and a YouTube video of a sales presentation on the QVC television channel of a knock-off piano mat by persons not facially connected to the Delaware company he sues today. The Pennsylvania creator has not met his burden to overcome the Delaware company's personal jurisdiction challenge. We grant the Delaware company's motion to dismiss for lack of personal jurisdiction in this District without prejudice.

**I.   Alleged facts**

Remo Saraceni, a Pennsylvania citizen, began marketing an "oversized" floor piano known as the "Big Piano" approximately thirty years ago,[1] Media outlets featured Mr. Saraceni and his Big Piano as early as 1983.[2] The publicity caused New York City toy store FAO Schwarz to buy several Big Pianos from Mr. Saraceni.[3] FAO Schwarz constructed a showroom inside its New York City flagship store displaying the Big Piano.[4]

The 1988 film "Big" popularized the Big Piano with a scene in which actors Tom Hanks and Robert Loggia dance to "Chopsticks" on the Big Piano:[5]



Mr. Saraceni received credits in "Big" "as the creator of the Big Piano."[6] People Magazine called the Big Piano an "icon."[7] Mr. Saraceni "extensively promoted and commercialized the Big Piano and his creatorship of the Big Piano" since 1982 by installing his "Big Piano in thousands of museums, children's hospital and other public spaces all over the world."[8] Mr. Saraceni registered a "BIG PIANO" trademark.[9]

*FAO Schwarz negotiates with Mr. Saraceni regarding its use of the Big Piano.*

Mr. Saraceni allowed FAO Schwarz to display the Big Piano at its New York City flagship store from 1982 to 2015.[10] Mr. Saraceni and FAO Schwarz's relationship garnered millions of dollars in revenue for FAO Schwarz.[11] In 2015, FAO Schwarz closed its flagship store.[12] A John Doe company which owns Delaware limited liability company MerchSource LLC purchased FAO Schwarz in October 2016.[13]

MerchSource and Mr. Saraceni negotiated beginning in October 2016 for MerchSource to use Mr. Saraceni's Big Piano at the new FAO Schwarz store in New York City.[14] MerchSource invited Mr. Saraceni to its California offices to conduct these negotiations.[15] MerchSource Chief Executive Officer Adam Gromfin signed an affidavit (not countersigned or otherwise reciting consideration) swearing MerchSource would not "advertise, market, or knowingly create an

association between current or future products sold under the FAO brand and Remo Saraceni or the BIG PIANO trademark."[16] Mr. Saraceni provided MerchSource with a Big Piano for its temporary retail and trade show use before opening the FAO Schwarz flagship in New York City.[17] MerchSource then "abruptly ceased negotiations" with Mr. Saraceni and did not obtain his permission to use the Big Piano.[18]

### *MerchSource markets a "knock-off" piano mat on QVC.*

Mr. Saraceni alleges MerchSource reopened FAO Schwarz's flagship New York City store in November 2018 displaying "a confusingly similar imitation of the Big Piano."[19] Retailer FAO Schwarz "prominently displayed" this piano in its store and sold "knock-off version piano mats."[20] MerchSource promoted the "Big [P]iano is Back" when it opened the flagship store.[21] MerchSource's website contains a video advertising its products stating: "[W]e're known for our Big Piano."[22] MerchSource created packaging for its piano mat product which imitates the scene from "Big" by displaying feet dancing on the mat.[23] MerchSource posted positive reviews which associated the mat with "Big" on its website.[24]

A person whom Mr. Saraceni alleges represented MerchSource appeared on QVC, a television sales channel, in QVC's West Chester, Pennsylvania studio to advertise the Big Piano.[25] MerchSource allegedly made "on-air statements" like: "[W]e all remember this beautiful keyboard from that very famous movie in the 80's"; "There's chopsticks made famous in that movie. And that's when people would come to the store to kind of play on the Big Piano"; "I want to show it to you the way you probably remember it the most, right? And that is when it was in that movie that we all love."[26]

*Mr. Saraceni sues MerchSource.*

Mr. Saraceni sues Delawarean MerchSource and John Does for: (1) false designation and unfair competition under section 1125(a) of the Lanham Act; (2) trade dress infringement under section 1125(a) of the Lanham Act; (3) trademark infringement under section 1114(1) of the Lanham Act; (4) false advertising under section 1125(a)(1)(B) of the Lanham Act; (5) violation of the right of publicity under Pennsylvania law; (6) breach of contract under Pennsylvania law; (7) common law unfair competition under 28 U.S.C. § 1338; (8) service mark infringement, unfair competition, and unfair trade practices under Pennsylvania law; (9) unjust enrichment under Pennsylvania law; (10) dilution under section 1125(c) of the Lanham Act; and (11) tortious interference with contractual and prospective contractual relations under Pennsylvania law.[27]

**II.   Analysis**

MerchSource moves to dismiss. It argues we cannot exercise personal jurisdiction because Mr. Saraceni does not plead MerchSource's activity in Pennsylvania giving rise to a cause of action.[28] It also argues Mr. Saraceni does not plead claims for trade dress infringement, violation of the right of publicity, and tortious interference.[29]

Mr. Saraceni responds MerchSource's QVC appearance from a Pennsylvania studio is purposeful availment.[30] MerchSource replies the QVC appearance does not constitute evidence of MerchSource's purposeful availment because Mr. Saraceni adduces no evidence the person in the QVC video is a MerchSource agent.

Mr. Saraceni does not adduce evidence establishing our personal jurisdiction over MerchSource. His limited evidence, including a YouTube video of the QVC appearance, does not show MerchSource purposefully availed itself of Pennsylvania. Mr. Saraceni declined our offer to undertake jurisdictional discovery.[31] He relies on his allegations even though MerchSource

4

demonstrates contrary facts. Mr. Saraceni rejected jurisdictional discovery based on his misunderstanding of his burden. We dismiss his amended Complaint without prejudice.

### A. Mr. Saraceni does not adduce evidence of purposeful availment in response to MerchSource's arguments.

Mr. Saraceni needs more than allegations and a YouTube video of someone selling a product to establish our personal jurisdiction over MerchSource. Because MerchSource raises a jurisdictional defense through a Rule 12(b)(2) motion, Mr. Saraceni must demonstrate facts—not relying on mere allegations—establishing personal jurisdiction.[32] Mr. Saraceni "must sustain [his] burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence."[33] This evidence "must support the *jurisdictional* allegations";[34] we accept Mr. Saraceni's other allegations "as true and construe disputed facts" in his favor.[35] Mr. Saraceni must not "rely on the bare pleadings alone in order to withstand" MerchSource's Motion."[36] Because we decline to "hold an evidentiary hearing on the motion to dismiss," Mr. Saraceni "need only establish a prima facie case of personal jurisdiction."[37]

"Personal jurisdiction can be general or specific."[38] "General jurisdiction extends to all claims against a defendant and exists where a company is 'essentially at home.'"[39] Mr. Saraceni does not plead MerchSource—a Delaware company with California offices—is at home in Pennsylvania. So Mr. Saraceni must show our specific jurisdiction.

Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims."[40] We apply the familiar "minimum contacts" test to determine specific jurisdiction.[41] The minimum contacts test entails three steps.[42] First, we must determine whether MerchSource "purposefully avail[ed] itself" of Pennsylvania.[43] Second, we must determine whether Mr. Saraceni's claims "'arise out of or relate to' at least one of those

activities."[44] Third, we should ensure asserting personal jurisdiction comports with fair play and substantial justice.[45]

The first step of our inquiry requires us to determine whether MerchSource took "some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within" Pennsylvania."[46] The purposeful availment "must be the defendant's own choice and not 'random, isolated, or fortuitous.'"[47] Deliberately reaching into Pennsylvania to exploit its market or contract in it would constitute purposeful availment.[48]

Mr. Saraceni *alleges* MerchSource purposefully availed itself of Pennsylvania in three ways: (1) MerchSource shipped and sold its infringing piano mats to Pennsylvania stores; (2) a MerchSource representative appeared on QVC from QVC's West Chester, Pennsylvania studio to promote the piano mat; and (3) MerchSource contracted with Mr. Saraceni—a Pennsylvania resident—to promise it would not associate its piano mat with his, then breached the contract through actions in Pennsylvania.[49]

But Mr. Saraceni must adduce competent evidence to rebut MerchSource's arguments. Mr. Saraceni submits only two relevant proofs: (1) an affidavit signed by MerchSource Chief Executive Officer Gromfin promising not to "advertise, market, or knowingly create an association between current or future products sold under the FAO brand and Remo Saraceni or the BIG PIANO trademark";[50] and a YouTube video showing two men advertising a piano mat during a QVC broadcast presumably from West Chester, Pennsylvania.[51]

### 1. The YouTube video alone is not evidence of purposeful availment without more proof.

Mr. Saraceni urges the QVC presentation establishes MerchSource's purposeful availment of Pennsylvania. The QVC presentation shows two men advertising an FAO Schwarz-branded piano mat which plays piano notes when the men press or step on the mat.[52] The packaged piano

mat, a piano mat on a table, and toy blocks reading "FAO" are displayed behind the men.[53] A second piano mat is displayed on the floor in front of the men.[54] The QVC host begins the segment by gesturing to the piano mat and saying, "We all remember this beautiful keyboard from that very famous movie in the 80's."[55] He then introduces the second man as "Chuck Santoro . . . the man who originally brought us FAO Schwarz."[56] Mr. Santoro says, "We're so happy that the FAO Schwarz brand is back this holiday season."[57] The QVC host dances on the mat, which plays musical notes as he does so.[58] Mr. Santoro then displays the packaging of the piano mat, which shows feet dancing on the mat, and calls the packaging "incredible."[59] Mr. Santoro plays the "Chopsticks" tune on the piano mat.[60] While doing so, Mr. Santoro says, "There's 'Chopsticks,' made famous in that movie. And that's why people would come to the store to kind of play on the Big Piano."[61] The men then return to the piano mat on the floor. The QVC host says, "I want to show it to you the way that you probably remember it the most, right? And that is when it was in that movie that we all loved."[62]

  We first address whether this YouTube video constitutes the level of competent evidence necessary to establish personal jurisdiction. Our Court of Appeals has not defined "competent evidence" in this context. The YouTube video contains several evidentiary deficiencies. For example, it is unauthenticated. "YouTube videos are self-authenticating" only "if the party offering the video provides certification by the custodian of the records" that the videos constitute records of a regularly conducted activity.[63] Mr. Saraceni submits no certification. The video also constitutes six minutes of hearsay.[64]

  We may still consider the YouTube video because we find evidence need not be admissible to be "competent" for purposes of establishing personal jurisdiction. Our Court of Appeals permits "sworn affidavits or other competent evidence"[65] to establish jurisdiction. This disjunctive

suggests competent evidence need not be admissible because sworn affidavits themselves generally contain inadmissible hearsay,[66] yet our Court of Appeals considers them to establish jurisdiction. And Mr. Saraceni must establish only a "prima facie" case of personal jurisdiction because we do not hold an evidentiary hearing. At this early stage, requiring a plaintiff to adduce only admissible evidence to confirm jurisdiction would create a mini-trial regarding personal jurisdiction whenever a defendant moves under Rule 12(b)(2). If we find a prima facie case of jurisdiction, defendants may challenge personal jurisdiction anew at the summary judgment stage, where evidence need be "capable of admission at trial."[67] For now, we may consider the YouTube video in its presently inadmissible form.[68]

      The YouTube video, however, does not establish MerchSource's purposeful availment of Pennsylvania because Mr. Saraceni adduces no evidence explaining how the men in the YouTube video can bind MerchSource. Mr. Saraceni sues only MerchSource and John Does. He adduced no evidence showing Mr. Santoro or the QVC host are MerchSource agents. We only possess evidence suggesting otherwise. For example, the QVC host introduces Mr. Santoro as "the man who originally brought us FAO Schwarz." The QVC host and Mr. Santoro do not mention MerchSource. MerchSource, meanwhile, submitted an affidavit signed by MerchSource's Chief Executive Officer Gromfin who swears, "MerchSource does not operate the FAO Schwarz retail or online stores and is not responsible for the activities of FAO Schwarz."[69] Mr. Saraceni does not adduce evidence rebutting Mr. Gromfin's affidavit. We know nothing about the relationship among MerchSource, FAO Schwarz, and Mr. Santoro. We may not simply assume Mr. Santoro represents MerchSource because Mr. Saraceni must adduce *facts* proving his "jurisdictional allegations."[70] We cannot draw such a substantial agency inference in Mr. Saraceni's favor when he fails to adduce any evidence supporting it.[71]

### 2. The MerchSource affidavit does not show purposeful availment.

Mr. Saraceni also cites an affidavit signed by Chief Executive Officer Gromfin and attached to the amended Complaint in which Mr. Gromfin swears MerchSource will not market certain products under the FAO brand. This affidavit does not establish our personal jurisdiction. Interpreting the affidavit in the light most favorable to Mr. Saraceni, as we must, does not establish Mr. Santoro acted on MerchSource's behalf on QVC. MerchSource apparently marketed the "FAO brand," but Mr. Saraceni does not connect Mr. Gromfin's affidavit to the QVC video. We cannot make arguments for Mr. Saraceni, as it is his burden to establish our personal jurisdiction. The present record does not foreclose the possibility MerchSource purposefully availed itself of Pennsylvania—but Mr. Saraceni does not carry his burden to show MerchSource *did* purposefully avail itself of Pennsylvania.

### B. We must reject jurisdictional discovery because Mr. Saraceni argued it is unnecessary.

We often consider expedited jurisdictional discovery to resolve jurisdictional questions.[72] But we already ordered Mr. Saraceni to notify us "whether he seeks expedited jurisdictional discovery in response to MerchSource's jurisdictional arguments."[73] Mr. Saraceni roundly rejected jurisdictional discovery.[74] He claimed personal jurisdiction "clearly exists" because "literally all of Plaintiff's claims arise out of or relate to Defendant's activities with QVC in West Chester."[75] Mr. Saraceni overlooked his need to prove the YouTube video depicts a MerchSource agent.

Considering Mr. Saraceni's firm rebuke of jurisdictional discovery, we must dismiss his amended Complaint without prejudice.[76] We grant him leave to either file a second amended Complaint in this District with renewed proofs or he may elect to transfer his second amended Complaint to the District of Delaware where MerchSource appears to be "at home" as a Delaware

limited liability company. Mr. Saraceni can then more readily progress to the merits of his claims including MerchSource's arguments on the merits which we need not reach today.

### III. Conclusion

The creator of the "Big Piano" made famous in the film "Big" sues a company for creating knock-off piano mats. The company challenged our personal jurisdiction, triggering the creator's duty to prove our personal jurisdiction with affidavits or other competent evidence. He adduced an affidavit signed by the allegedly infringing company and cites to YouTube videos from QVC shows as evidence. This evidence does not show the company purposefully availed itself of Pennsylvania. The creator rejected jurisdictional discovery wrongly thinking he could rely on conclusory allegations after being challenged and then relying on a QVC video without tying the video to the alleged infringing Delaware company. We must dismiss his amended Complaint without prejudice.

---

[1] ECF Doc. No. 9 ¶¶ 1, 11.

[2] *Id.* ¶ 12.

[3] *Id.* ¶ 13.

[4] *Id.*

[5] *Id.* ¶ 11; *see also Big (1988) – Playing the Piano Scene (2/5) | MovieClips*, YouTube, available at https://www.youtube.com/watch?v=CF7-rz9nIn4 (last visited January 30, 2022).

[6] ECF Doc. No. 9 ¶ 17.

[7] *Id.* ¶ 16.

[8] *Id.* ¶ 18.

[9] *Id.* ¶ 24.

[10] *Id.* ¶ 26.

[11] *Id.* ¶ 27.

[12] *Id.* ¶ 28.

[13] *Id.* ¶ 29.

[14] *Id.* ¶ 30.

[15] *Id.* ¶ 31.

[16] *Id.* ¶ 32; ECF Doc. No. 9-3 at 2.

[17] ECF Doc. No. 9 ¶ 32.

[18] *Id.* ¶ 33.

[19] *Id.* ¶ 34.

[20] *Id.*

[21] *Id.* ¶ 35.

[22] *Id.* ¶ 36.

[23] *Id.* ¶ 41.

[24] *Id.* ¶ 42.

[25] *Id.* ¶ 40.

[26] *Id.*

[27] *Id.* at 13–24.

[28] ECF Doc. No. 11-1 at 10.

[29] *Id.* at 17–22.

[30] ECF Doc. No. 15 at 2.

[31] ECF Doc. No. 14.

[32] *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).

[33] *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990).

[34] *Pendergrass-Walker v. Guy M. Turner, Inc.*, No. 16-5630, 2017 WL 2672634, at *3 (E.D. Pa. June 21, 2017) (emphasis added) (citing *Patterson*, 893 F.2d at 603–04).

[35] *Deardorff v. Cellular Sales of Knoxville, Inc.*, No. 19-2642, 2020 WL 5017522, at *2 (E.D. Pa. Aug. 25, 2020).

[36] *Patterson*, 893 F.2d 595 at 604.

[37] *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). We decline to hold an evidentiary hearing because Mr. Saraceni rejected jurisdictional discovery. He elected to submit extrinsic evidence in his Response to MerchSource's Motion. *See* ECF Doc. No. 14 (rejecting jurisdictional discovery); ECF Doc. No. 15 (submitting exhibits).

[38] *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021).

[39] *Id.* (quoting *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1024 (2021)).

[40] *Ford Motor Co.*, 141 S. Ct. at 1024.

[41] *Hepp*, 14 F.4th at 207.

[42] *Gentex Corp. v. Abbott*, 978 F. Supp. 2d 391, 396 (M.D. Pa. 2013) (citing *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007)).

[43] *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003).

[44] *O'Connor*, 496 F.3d at 317 (3d Cir. 2007) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

[45] *Id.* We also must ensure Pennsylvania's long-arm statute allows personal jurisdiction. *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). This does not entail a separate analysis in Pennsylvania, however, because "Pennsylvania's long-arm statute gives its courts jurisdiction over out-of-state defendants to the maximum extent allowed by the U.S. Constitution." *Id.* (citing 42 Pa. Cons. Stat. § 5322(b)).

[46] *Ford Motor Co.*, 141 S. Ct. at 1024 (second alteration in original).

[47] *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

[48] *Id.* at 1025.

[49] ECF Doc. No. 9 ¶ 5.

[50] ECF Doc. No. 9-3 at 2.

[51] *See* ECF Doc. No. 15-1 at 6. Mr. Saraceni also submits several other screenshots of YouTube videos. We accessed the videos. They simply display advertisements by FAO Schwarz for an "upright toy piano" product and the allegedly infringing dance mat product. Mr. Saraceni does not adduce evidence showing how these videos relate to MerchSource, let alone MerchSource's activities in Pennsylvania.

[52] *See FAO Schwarz Piano Dance Mat with Built in Songs on QVC*, YouTube, available at https://www.youtube.com/watch?v=PRnyIEY4E-8 (last visited January 30, 2022). The YouTube video itself does not establish the QVC broadcast occurred in West Chester. We may judicially notice QVC's studios are located in West Chester, Pennsylvania. *See, e.g*, *QVC Studio Tour*, QVC, https://www.qvc.com/content/information/qvc-studio-tours.html (noting "QVC Studio Park" is located in West Chester, PA and describing QVC's studios); *see also QVC, Inc. v. Patiomats.com, LLC*, No. 12-3168, 2012 WL 3155471, at *5 (E.D. Pa. Aug. 3, 2012) ("QVC maintains its principal place of business in West Chester, Pennsylvania.").

[53] *See generally FAO Schwarz Piano Dance Mat with Built in Songs on QVC*, YouTube, available at https://www.youtube.com/watch?v=PRnyIEY4E-8 (last visited January 30, 2022).

[54] Id.

[55] *Id.* at 0:18–0:24. We use pinpoint citations to refer to relevant timestamps of the YouTube video.

[56] *Id.* at 0:29–0:34.

[57] *Id.* at 0:50–0:54.

[58] *Id.* at 1:15–1:25.

[59] *Id.* at 3:10–3:43.

[60] *Id.* at 4:24–4:31.

[61] *Id.* at 4:26–4:31.

[62] *Id.* at 4:54–5:02.

[63] *Ratner v. Kohler*, No. 17-00542, 2018 WL 1055528, at *11 (D. Haw. Feb. 26, 2018) (citing *United States v. Hassan*, 742 F.3d 104, 132–34 (4th Cir. 2014)).

[64] *See* Fed. R. Evid. 801.

[65] *Patterson*, 893 F.2d at 604.

[66] *See, e.g.*, *Walton v. Corr. Officer Harkleroad*, No. 13-1109, 2016 WL 5887180, at *2 (W.D. Pa. Oct. 7, 2016) (statements contained in affidavits and declarations are hearsay).

[67] *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014).

[68] We recognize the Supreme Court of the Virgin Islands requires courts deciding Rule 12(b)(2) motions to "accept as true all of plaintiff's factual allegations that are supported by affidavits or other competent evidence **which would be admissible at trial**." *Molloy v. Indep. Blue Cross*, 56 V.I. 155, 173 (2012) (emphasis added) (citing *Metcalfe*, 566 F.3d at 330). We disagree with this framework. It is unclear how the Virgin Islands courts crafted the admissibility requirement. The Supreme Court of the Virgin Islands mentioned the admissibility requirement in *Molloy* by citing our Court of Appeals's *Metcalfe* decision. *Id.* But our Court of Appeals in *Metcalfe* does not suggest evidence must be admissible to be "competent." The court in *Metcalfe* appeared to consider inadmissible evidence—an affidavit signed by the plaintiff—to establish personal jurisdiction. *Metcalfe*, 566 F.3d at 333. Our Court of Appeals explicitly disagreed with the lower court's finding the affidavit did not constitute competent evidence. *Id. Metcalfe* only requires plaintiffs "make a threshold showing in support of jurisdiction"; once done, plaintiffs are "entitled to have their allegations viewed as true and have disputed facts construed in their favor." *Metcalfe*, 566 F.3d at 331.

[69] ECF Doc. No. 4-2 at 2 ¶ 4.

[70] *Pendergrass-Walker*, 2017 WL 2672634, at *3.

[71] *See, e.g.*, *Baker v. LivaNova PLC*, 210 F. Supp. 3d 642, 651 (M.D. Pa. 2016) (granting 12(b)(2) motion where plaintiff supported personal jurisdiction with only "unpersuasive documents and conclusory statements").

[72] *See Toys "R" Us, Inc.*, 318 F.3d at 456 ("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is "clearly frivolous." (internal citation omitted)).

[73] ECF Doc. No. 12 at 1 ¶ 2.

[74] ECF Doc. No. 14 at 2 ("Plaintiff will not be seeking expeditated discovery in response to Defendant's jurisdictional arguments." (underlining in original)).

[75] *Id.* at 1.

[76] In the same Notice in which he assertively rejected jurisdictional discovery, Mr. Saraceni also asked "that his right to take limited jurisdictional discovery on these narrow issues be reserved" if we find his evidence does not establish jurisdictional discovery. *Id.* at 2. But Mr. Saraceni represented to us he "will not be seeking expedited discovery." *Id.*  His purported reservation does not affect his decision to not obtain discovery on the motion before us. We do not opine as to whether his reservation will affect discovery should he file a second amended Complaint seeking to invoke specific personal jurisdiction in this District.